UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINICK JONES,

              Plaintiff,                    CIVIL CASE NO: 14-11847
                                                HONORABLE VICTORIA A. ROBERTS

v.

CITY OF TAYLOR, JEFFERY GRAVES,
CHRISTOPHER CATES, DOMINICK
DIGGS-TAYLOR, AND DANIEL TOTH,

              Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.  NATURE OF ACTION**

       This action arises out of the arrest of Dominick Jones ("Jones") following an altercation with his girlfriend's sister when he intervened in their fight. The sister placed a frantic 911 call alleging Jones broke her arm. The police responded.

       Jones sues Corporal Jeffrey Graves ("Graves"), Officers Christopher Cates ("Cates"), Dominick Diggs-Taylor ("Diggs-Taylor"), and Daniel Toth ("Toth"), as well as the City of Taylor ("City"). Count I alleges that Defendants violated Jones' federal civil rights under 42 U.S.C. § 1983; it alleges unlawful arrest, malicious prosecution, illegal entry, excessive force, and failure to provide medical attention. Count II alleges that the City's practices, policies, and procedures caused a constitutional violation.

       Defendants moved for summary judgment on all allegations. The Court heard oral argument on July 6, 2015.

For the reasons stated, the Court: (1) **GRANTS** summary judgment on Jones' wrongful entry claim; Defendants Diggs-Taylor and Cates are entitled to qualified immunity because they did not violate Jones' clearly established constitutional rights as of August 29, 2013 by entering the home he was in without a search warrant; (2) **DENIES** summary judgment on Jones' excessive force and unlawful arrest claims; questions of fact must be resolved before the Court can consider whether Defendants are entitled to qualified immunity; (3) **DENIES** summary judgment on Jones' malicious prosecution claim; Defendants failed to develop their argument on this request; (4) **GRANTS** summary judgment on Jones' failure to provide medical treatment claim; there was no constitutional violation; and (5) **GRANTS** summary judgment on Jones' claim against the City of Taylor; there was no constitutional violation.

### A.  Statement of Facts

On August 29, 2013, Jones, his girlfriend Melanie Nestor ("Melanie") and her sister Hannah Dennis ("Hannah"), visited the home of a third sister, Emilee Dennis ("Emilee"). Melanie and Hannah argued and that escalated into a physical fight. Jones says he intervened. Hannah left the house, called 911, and reported that Jones broke her arm.

Around 11:26 pm, officers Diggs-Taylor, Cates, Graves, and Toth responded to Hannah's call. When they arrived, Hannah was outside holding her arm. Hannah testified they went immediately into the house and had no conversation with her. Diggs-Taylor and Cates went into the house to investigate; Graves and Toth remained outside.

As Diggs-Taylor and Cates approached the front door, they could see Jones, Melanie, and Emilee sitting on the couch. Without knocking or announcing, the officers entered the house and asked for Jones. Jones identified himself. At this point, the account of the facts differs between Jones and the officers.

According to Jones, Diggs-Taylor told him to stand up. Jones says he complied and asked

the officers "What's going on?" Diggs-Taylor told Jones to move to the kitchen; Jones says again he complied. Jones continued to question the officers. Once in the kitchen, Diggs- Taylor told Jones to raise his hands in the air. Jones began to comply, but as he raised his hands, Diggs-Taylor shouldered him into a counter. Cates then threw Jones into a table, hit him in the chest knocking him down, and held him. Responding to the sound of a struggle in the house, Graves and Toth entered the house and secured Jones' arms. Jones says Graves and Toth beat him.

Diggs-Taylor kneed Jones in the head several times. Finally, Cates stood up from holding Jones and tasered him twice.

Throughout the incident, Jones claims that he did not resist or move. Emilee and Melanie support Jones' version of events. Hannah remained outside and did not witness what occurred. Jones claims that after initially instructing him to raise his hands, the officers did not give him additional instruction. Jones says he did ask them if he was being arrested.

The officers tell a very different version of events. They claim that Jones only complied with their instruction to stand up, but when Diggs-Taylor told Jones to put his hands behind his back so that he and Cates could pat him down, Jones instead turned around, clenched his fists, and started yelling. The officers say they repeated their instruction for Jones to put his hands behind his back, but Jones ran toward the kitchen. As Jones ran, Cates tried to grab him. The two fell into a table. Diggs-Taylor and Cates say they repeatedly told Jones to stop resisting and put his hands behind his back. Jones refused, continued yelling, and clenched his hands underneath him. Cates tasered Jones twice. Defendants say Jones did not allow the officers to control and handcuff him until after the second taser. Graves and Toth entered the house after hearing the struggle. Graves and Toth say they did not touch Jones, except when Graves handcuffed Jones.

## II.  APPLICABLE LAW

### A.   Summary Judgment

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

## III.  Analysis

### A.   Count I: Federal Constitutional Violations

Jones' 42 U.S.C. § 1983 claim alleges unlawful arrest, malicious prosecution, wrongful entry, excessive force, and failure to provide medical attention.

To prevail on these claims, Jones "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Smoak v. Hall,* 460 F.3d 768, 777 (6th Cir.2006) (citing *Waters v. City of Morristown,*242 F.3d 353, 358-59 (6th Cir.2001)). However, a defendant may assert the defense of qualified immunity, which shields government officials from " 'suit under § 1983 for their discretionary actions.' " *Gradisher v. City of Akron*, No. 14-3973, 2015 WL 4503208 at *6 (6th Cir. 2015) (quoting *Cummings v. City of Akron*, 418 F.3d 676, 685 (6th Cir. 2005)). "To overcome that defense, a plaintiff must show that, when the facts are viewed in the light most favorable to him, (1) the defendant deprived him of a constitutionally protected right, and (2) the right was 'clearly established' at the time of the violation." *Gradisher*, 2015 WL 4503208 at *6 (quoting *Morrison*

4

*v. Bd. Of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). " 'Courts may [ ] address these prongs in either order; indeed one may be dispositive.' "*Gradisher*, 2015 WL 4503208, at *6 (quoting *Austin v. Redford Twp. Police Dep't,* 690 F.3d 490, 496 (6th.Cir.2012)). " 'If either one is not satisfied, qualified immunity will shield the officer from civil damages.' " *Gradisher*, 2015 WL 4503208, at *6, (quoting *Martin v. City of Broadview Heights,* 712 F.3d 951, 957 (6th Cir.2013)).

"With regard to the second prong, '[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Gradisher*, 2015 WL 4503208, at *6 (quoting *Ashcroft v. al-Kidd,* ––– U.S. –––, ––––, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (internal quotation marks and brackets omitted). "Whether a right has been clearly established should not be determined at 'a high level of generality.' " *Gradisher*, 2015 WL 4503208, at *6 (quoting *Ashcroft*, 131 S.Ct. at 2084). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S.Ct. at 2083.

Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "The essence of qualified immunity [ ] is to give government officials cover when they resolve close calls in reasonable (even if ultimately incorrect) ways." *Hagans v. Franklin Cnty. Sheriff's Office,* 695 F.3d 505, 511 (6th Cir.2012). "[S]ince the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," *Brandenburg v. Cureton,* 882 F.2d 211, 216 (6th Cir.1989), "summary judgment is inappropriate where there are contentious factual disputes," *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 903 (6th Cir.1998).

### i. Wrongful entry

5

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV. "Searches of the home must be reasonable." *Johnson v. City of Memphis*, 617 F.3d 864, 867 (6th Cir. 2010). "This reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). Warrantless searches are presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

Jones concedes his claim for wrongful entry against Graves and Toth.

Diggs-Taylor and Cates claim Hannah did not tell them not to enter; this is their entire "consent" argument and it fails; the government bears the burden to prove that consent was freely and voluntarily given. *U.S. v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.E.2d 797 (1968).

Instead, Diggs-Taylor and Cates rely upon exigent circumstances as an exception to the warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). They claim that given their observations of Hannah and their reliance on the 911 dispatch, they believed there was a risk of danger to innocent people in the house and a need to prevent Jones' escape. *See United States v. Johnson*, 106 Fed. Appx. 363, 366 (6th Cir. 2004) (exigent circumstances where the need to prevent a suspect's escape and a risk of danger to the police and others); *see also Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003) ("efficient law enforcement requires – at least for the purpose of determining civil liability of individual officers – that police be permitted to rely on information provided by the dispatcher.").

Diggs-Taylor and Cates cite *Ewolski v. City of Brunswick*, 287 F.3d 292, 510 (6th Cir. 2002):

The importance of the potential danger to innocent people in the house is apparent from the Sixth Circuit's opinion in *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996), which held that even the articulation of the exception requires only a "justified belief" and does not require knowledge or certainty of the presence of someone in danger. In finding that exigent circumstances existed as a matter of law in *Dickerson*, the Sixth Circuit emphasized that the reasonable belief that a hostage could be present in the house – even though this turned out not to be the case – would suffice.

The Sixth Circuit held in *Gradisher*, "[w]hether there was an objectively reasonable basis for the officers to enter [the plaintiff's] residence without a warrant due to exigent circumstances is a close question." *Gradisher*, 2015 WL 4503208, at *7. The court stated "we need not decide whether the officers unlawfully entered the residence because '[w]e opt to answer the easier [] question[]' of whether the officers violated some constitutional right belonging to [the plaintiff] that was clearly established at the time of the incident." *Id.* (quoting *Hagans*, 695 F.3d at 511).

### 1.  Diggs-Taylor and Cates Are Entitled to Qualified Immunity

While Jones argues Diggs-Taylor and Cates' entry into the home was not reasonable because they failed to knock and announce (Pl.'s Corrected Resp. and Br. in Opp'n to Defs.' Mot. for Summ. J. 16), had no consent and no exigent circumstances justifying entry (*Id*. at 17), Jones fails to address Diggs-Taylor and Cates' argument that they are entitled to the protections of qualified immunity for their entry.

All Jones says with respect to qualified immunity and entry in the house is: "Diggs and Cates improperly entered the Nestor home" (*Id*. at 25) and "[t]he right to be free from wrongful

7

entry and seizure is long established." (*Id*. at 26). He directs the Court to no law that Diggs-Taylor and Cates were clearly wrong to enter the house under these circumstances

But, as the court found in *Gradisher*, Jones "frames the issue at too high a level of generality." *Gradisher*, 2015 WL 4503208, at * 8 (citing *Ashcroft*, 131 S.Ct. at 2084).

The appropriate question to ask is whether it was clearly established on August 29, 2013, that no exigent circumstances existed when officers responded to a 911 call that a man had broken a woman's arm; they observed her crying outside the home, holding her arm; and, she had told the 911 dispatcher that Jones was still inside the home. Diggs-Taylor and Cates could reasonably have had a concern that Jones could flee or harm others.

Viewing the evidence in the light most favorable to Jones, the Court is not persuaded that Diggs-Taylor and Cates violated his clearly established rights by entering the house.

The recent *Gradisher* case confirms the law in this circuit: " '[e]ven if the officers' belief that someone within [a residence] could be in danger is a close question, the officers are entitled to the benefit of the doubt under the qualified immunity standard.' " *Gradisher*, 2015 WL 4503208, at *8 (quoting *Dickerson*, 101 F.3d at 1160). The shield given to officers by qualified immunity "sweeps broadly, affording them ample room for mistaken judgments' by protecting all but the plainly incompetent or those who knowingly violate the law." *Scott v. Clay Cnty.*, 205 F.3d 867, 874 (6th Cir. 2000) (quoting *Sova*, 142 F.3d at 902) (internal quotations removed).

Diggs-Taylor and Cates are entitled to the protections of qualified immunity, and the Court grants them summary judgment on Jones' claim of unlawful entry. The Court dismisses Jones' wrongful entry claim against Graves and Toth; Jones conceded that claim.

### ii. Excessive Force

Jones claims that Diggs-Taylor and Cates violated his Fourth Amendment rights when Diggs-Taylor tackled him and kneed him in the head several times and when Cates threw him

8

into a table, hit him in the chest and tasered him twice. Jones claims that as he was complying with Diggs-Taylor's instruction to raise his hands, Diggs-Taylor tackled him into a kitchen counter. Cates then threw Jones into a table, hit him in the chest knocking him down, and held him. While Jones was down, Diggs-Taylor kneed him in the head several times. Finally, Cates stood up from holding Jones and tasered him twice.

Jones claims that Graves and Toth violated his Fourth Amendment rights when they held him to the ground along with Cates and kicked and hit him once he was on the ground. Jones claims that Graves and Toth entered the house after hearing the initial scuffle between him, Diggs-Taylor, and Cates.

The Sixth Circuit holds that the "right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). In evaluating whether this prohibition has been violated, courts employ an "objective reasonableness" test, which requires consideration of the totality of the circumstances. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); *Summerland v. County of Livingston,* 240 Fed.Appx. 70, 76 (6th Cir.2007) ("The ultimate question is 'whether the totality of the circumstances justified a particular sort of search or seizure.' " (quoting *Tennessee v. Garner,* 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985))). "The test is fact specific, not mechanical, and the three most important factors for each case are: (1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee." *Wysong,* 260 Fed.Appx. at 854.

Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1865. This inquiry must be conducted with sufficient respect for the fact that police officers often confront exceedingly perilous situations where detached rumination risks loss of life. *See id.* at 396-97, 109 S.Ct. at 1865 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.").

Issues of fact remain as to whether Jones resisted arrest. According to him, Defendants accosted him while he was complying with their orders. Jones claims that he complied with the officers' request to stand and that he was complying with the officers' request to raise his hands in the air when Diggs-Taylor tackled him. If Diggs-Taylor tackled Jones as he was complying with the officer's direction, then Jones could not have resisted. While Jones admits that he questioned the officers as he raised his hands, he denies threatening them. *See Lawler v. City of Taylor*, 268 Fed.Appx. 384, 386-87 (6th Cir. 2008) (officer's "use of force in throwing [suspect] to the floor was disproportionate to any threat he faced," given that suspect had merely insulted officer and "raised his left arm slightly").

Jones further denies resisting the officers once he was on the ground. First, Jones disputes the officers' claim that they shouted at him to stop resisting and put his hands behind his back.

Although Jones does not remember what the officers said during this time, Melanie and Emilee testified that the officers did not give instructions. If the officers did not provide directions for how Jones could comply, then Jones did not resist their directions. Second, Jones claims that he did not resist once he was on the ground.

"Absent some compelling justification such as the potential escape of a dangerous criminal or the threat of immediate harm-the use of [force] on a non-resistant person is unreasonable." *Kijowski v. City of Niles*, 372 Fed.Appx. 595, 600 (6th Cir. 2010). Although Jones

10

and the Defendants agree that the scene quickly escalated into chaos and confusion, with Melanie and Emilee shouting at the officers, general disorder does not necessarily justify the use of force. *See id.* (use of taser against suspect presenting no risk of unreasonable harm, despite a chaotic environment). Defendants point out that they were responding to a report of domestic violence. But the use of force against a suspect while they investigate a violent crime—absent evidence of resistance or an immediate threat—is unreasonable. *See Roberts v Manigold*, 240 Fed.Appx. 675 (6th Cir. 2007) (officer's use of a taser to subdue an arrestee for domestic violence was unreasonable); *Schmalfeldt v. Roe*, 412 Fed.Appx. 826 (6th Cir. 2011); *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010).

In responding to a report of violent crime, force is only reasonable if an additional element of resistance or threat is present. *See Lawrence v. Bloomfield Tp.*, 313 Fed.Appx. 743 (6th Cir. 2008) (reasonable use of force where officers responded to a domestic violence call and the suspect behaved aggressively); *Goodrich v. Everett*, 193 Fed.Appx. 551 (6th Cir. 2006) (reasonable use of force where officers responded to a report of domestic assault and the suspect resisted the officers' orders); *see also Hagans*, 695 F.3d at 505 ("when [the 6th circuit has] found excessive force, the suspects were compliant or had stopped resisting" and that "[a] suspect's active resistance also marks the line between reasonable and unreasonable tasing in other circuits").

Whether Jones resisted or not, and whether he was given an opportunity to comply with commands before force was used, is disputed. "Where, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Gradisher*, 2015 WL 4503208, at *9 (quoting *Sova*, 142 F.3d at 903).

The Court **DENIES** summary judgment on Jones' claim of excessive force.

### iii.  Unlawful Arrest

11

Jones claims that Defendants violated his Fourth Amendment rights when they unlawfully arrested him. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson,* 625 F.3d 294, 305 (6th Cir.2010) (citation omitted). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' " *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest.*" *United States v. Pearce,* 531 F.3d 374, 380–81 (6th Cir.2008) (quoting *Devenpeck v. Alford,* 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)) (emphasis added). An officer's "warrantless arrest is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck*, 543 U.S. at 152.

### 1. Issues of Fact Remain as to Whether Defendants Unlawfully Arrested Jones

This is Jones' allegation concerning unlawful arrest: "Defendants, acting under color of state law, violated Plaintiff's well-established rights to be free from…wrongful arrest…" (Pl.'s Compl. 4).

This is his argument in response to Defendants' motion for summary judgment: "According to Toth, who brought the charges against Plaintiff, he consulted with the other Defendants on what charges to bring … Significantly, Defendants don't even try to make any case in their Motion for establishing probable cause for an arrest on resisting." (Pl.'s Resp. 24).

Jones' view on the issue is far too narrow. Defendants argue they had the right to enter the house to investigate Hannah's assault allegations, that the situation escalated, and that Jones "cannot dispute that he did not follow the officers' directions, [giving them] probable cause to

arrest him for violation of the city ordinance [for failure to follow a lawful command]." (Defs.' Mot. for Summ. J. 16). Defendants make a plausible argument as to how the original 911 call on an assault morphed into a resisting arrest case.

Importantly, however, Defendants are wrong that Jones cannot dispute that he did not follow the officers' directions. While Jones testified he had no specific recollection of what the officers said to him, Emilee and Melanie testified Jones did all he was directed to do.

Significant questions of fact are in dispute as to whether Jones resisted a lawful command. And, the question of whether the officers are entitled to immunity turns upon which version of the facts the jury accepts. *See Sova*, 142 F.3d at 903.

The Court **DENIES** Defendants' request for summary judgment.

### iv.  Malicious Prosecution

Jones claims that Defendants are liable for malicious prosecution because they fabricated evidence, which by reasonable inference, they told the prosecutor prior to trial.

To succeed on a malicious prosecution claim under § 1983, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir.2007); *see also McKinley v. City of Mansfield,* 404 F.3d 418, 444 (6th Cir.2005); *Darrah v. City of Oak Park,* 255 F.3d 301, 312 (6th Cir.2001); *Skousen v. Brighton High Sch.,* 305 F.3d 520, 529 (6th Cir.2002). There is no question that a criminal prosecution for resisting arrest was brought against Jones; the real issue is whether Defendants influenced the decision.

Second, because this claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox,* 489 F.3d at 237; *Voyticky v. Vill. of Timberlack, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005).

13

Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr,* 477 F.3d 75, 81 (3d Cir.2007); *see Gregory v. City of Louisville,* 444 F.3d 725, 748–50 (6th Cir.2006) (discussing the scope of "Fourth Amendment protections ... beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v.Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process.").

Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck,* 512 U.S. at 484, 114 S.Ct. 2364 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). There is no question that the prosecution of Jones for resisting arrest resolved in his favor.

**1.  An Issue of Fact Remains as to Whether Defendants Had Probable Cause to Initiate Criminal Proceedings**

The Defendants' argument that they are entitled to summary judgment on Jones' malicious prosecution claim is this: "There is no evidence that all four Defendants initiated the criminal prosecution of Jones and, therefore, Jones' malicious prosecution claim fails on that basis as well." (Defs.' Mot. 17).

This is the extent of Defendants' argument that they are entitled to summary judgment on Jones' malicious prosecution claim.

" '[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived.' " *Gradisher*, 2015 WL 4503208, at *9 (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)).

The Court **DENIES** summary judgment to Defendants.

14

### v.  Failure to Provide Medical Treatment

Jones claims Defendants inadequately treated his injuries. The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Fourteenth Amendment's Due Process Clause governs such claims presented by pretrial detainees, but "are analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Villegas v. Metro. Gov't of Nashville,* 709 F.3d 563, 568 (6th Cir. 2013).

Courts employ a two-prong test with objective and subjective components to assess such claims. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). First, courts determine whether the plaintiff had a " 'sufficiently serious' medical need" under the objective prong. *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008). A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 897 (6th Cir. 2004).

Second, courts determine whether the defendant had a " 'sufficiently culpable state of mind' " in denying medical care under the subjective prong. *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer,* 511 at 834, 114 S.Ct. at 1970). There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required. *See Farmer,* 511 U.S. at 835, 114 S.Ct. at 1970. The defendant must have "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." *Blackmore,* 390 F.3d at 896 (internal quotation marks omitted). Where the plaintiff received some medical treatment, "federal courts are generally reluctant to second guess medical

15

judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976). However, it is possible for the treatment provided to be "so woefully inadequate as to amount to no treatment at all." *Id.; accord Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011).

### 1.  An Issue of Fact Remains as to Whether Jones' Head Injury Establishes the Objective Prong of the Deliberate Indifference Test

Jones says his injury was obvious and Defendants should have known it was serious. In support, Jones provides testimony claiming that he bled from the head and had trouble standing following the incident with Defendants. Melanie testified that after the beating, she was not sure whether Jones was conscious because his eyes were rolled back in his head and he was unable to move. While Defendants do not dispute this, they argue that Jones provided no evidence that he had a sufficiently serious medical need.

Viewing the evidence in the light most favorable to Jones, there is an issue of fact as to whether Jones suffered from a "sufficiently serious" medical need. *See Phillips v. Roane County, Tenn.*, 534 F.3d 531, 540 (6th Cir. 2008) (sufficiently serious medical where, among other symptoms, defendants found plaintiff unconscious and later vomiting blood).

Although Jones meets the objective component sufficient to survive summary judgment, he fails to demonstrate an issue of fact on the subjective component.

### 2.  No Issue of Fact Remains as to Whether Jones Meets the Subjective Prong of the Deliberate Indifference Test

Jones claims that the severity of his injuries alone establishes Defendants' state of mind. This argument is unavailing.

First, Jones received medical treatment – or at least had the opportunity to request it – when he was taken to the police car. There, EMS removed the taser probes from his body.

16

"Where the plaintiff has received some medical treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.' " *Burgess*, 735 F.3d at 476 (quoting *Westlake*, 537 F.2d at 860).

Second, Jones declined medical treatment after he was taken to the Taylor jail and asked whether he required medical treatment. Jones signed his booking record, verifying that he did not require medical treatment and that he did not have a head injury.

Finally, Jones never asked Defendants for medical treatment. While "the failure to give advance notice [for medical treatment] is not dispositive," Jones provides no other evidence establishing Defendants' awareness. *Farmers*, 511 at 849, 114 S.Ct. at 1985. Additionally, although Jones claims that a booking officer rebuffed his request for medical treatment, Jones does not name this individual in his complaint.

Jones fails to satisfy the second prong of his deliberate indifference to medical treatment claim. He provides no evidence establishing Defendants' sufficiently serious state of mind. Thus, no issue of fact remains as to whether Defendants violated Jones' constitutional rights.

Defendants are entitled to summary judgment on Jones' claim that they failed to provide him medical attention.

### B.  Count II: Defendant City of Taylor

Jones claims that the City of Taylor violated his Fourth Amendment rights by failing to investigate or discipline officers and by failing to train them. Because a plaintiff cannot rely on *respondeat superior* to hold a municipality liable under § 1983, *see Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), he must show that the municipality's policy (or lack thereof) was a "moving force" in the deprivation of the plaintiff's rights and arose from "deliberate indifference" to the plaintiff's rights. *See Doe v.*

17

*Claiborne County, Tennessee,* 103 F.3d 495, 508 (6th Cir. 1996).

Likewise, to prevail on a failure to train claim under § 1983, the plaintiff must prove: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989). Liability cannot be imposed unless "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [governmental body] can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Jones claims an investigation not in compliance with the City of Taylor's policy establishes the constitutional violation. Jones says that Cates failed to submit a report to his supervisor in violation of the City's policy. In turn, he says, Cates' supervisor, Sgt. Godlewski ("Godlewski"), violated City policy because he did not have a report from Cates to review. Finally, Jones says Lt. Lividini ("Lividini") failed to report these violations, and failed to "note the inconsistencies between Godlewski's report and the officer's recorded statements."

Jones relies on *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987), which held that a failure to investigate complaints or investigate officers can give rise to § 1983 liability. *See also Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989), *cert denied*, 495 U.S. 932 (1990). The theory underlying *Marchese* is that the municipality's failure to investigate or discipline amounts to a "ratification" of the officer's conduct.

However, *Marchese* is distinguishable. In *Marchese* the responsible government entity took *absolutely no action* in the face of several prior incidents that should have required an

18

investigation into the employee's conduct. Here, in contrast, the City conducted meaningful investigations into the incidents involving Jones. While Cates himself did not submit a report of the incident, Cate's partner, Toth, submitted an incident report to Godlewski. Contrary to Jones' claim, Godlewski reviewed Toth's report, and then submitted his own Use of Force report after reviewing Toth's report, the City's policies and procedures, and talking to Cates. Lividini also investigated the incident, talking to Jones and Cates, reviewing the reports and listening to the 911 call. Therefore, the City's investigations into Cates' conduct do not amount to "deliberate indifference" to Cate's alleged unconstitutional conduct. *See Dyer v. Casey*, 72 F.3d 129, 130 (6th Cir. 1995) (no constitutional violation where police department conducted investigations into alleged misconduct).

Jones further claims that while the City had specific policies that required training and specified use of tasers, Cates did not remember his taser training.  Although Cates testified that he did not remember any training specifically regarding the use of tasers, such testimony, standing alone, has been held insufficient to defeat summary judgment. *See Russo v. City of Cincinnati,* 953 F.2d 1036, 1049 (6th Cir. 1992) (Wellford, J., concurring); *see also Sova,* 142 at 904 (upholding grant of summary judgment for defendants on failure to train claim where "[t]he record shows that all the officers had received extensive training" and noting that "[a]llegations that a particular officer was improperly trained are insufficient to prove liability"); *City of Canton,* 489 U.S. at 390-91, 109 S.Ct. at 1206 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Additionally, the fact that Cates may have mishandled his taser does not, in itself, demonstrate that the training was inadequate. *See Carey v. Helton*, 70 Fed.Appx. 291, 294 (6th Cir. 2003) (officer's contravention of training does not demonstrate that the training was

19

inadequate).  Jones fails to establish an issue of fact as to whether the City of Taylor violated his

Fourth Amendment rights.

The Court **GRANTS** the Motion for Summary Judgment for all claims against the City of

Taylor.


### C.  Conclusion

The Court: (1) **GRANTS** summary judgment on Jones' claims of wrongful entry, failure

to provide medical treatment, and against the City of Taylor; and (2) **DENIES** summary judgment

on Jones' excessive force, unlawful arrest, and malicious prosecution claims. Trial will proceed

on Count I: (1) excessive force; (2) unlawful arrest; and (3) malicious prosecution.


### D.  Motion to Amend Pleading

Defendants say Jones failed to establish a § 1983 claim, which requires the plaintiff to

show "that a person acting under color of state law deprived [him] of a right secured by the

Constitution or laws of the United States." *Smoak,* 460 F.3d at 777 (citing *Waters,* 242 F.3d at 358-

59).

To establish a § 1983 claim, the Sixth Circuit requires each defendant's liability to be

assessed individually based on his own actions. *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010).

Defendants argue that Jones' complaint fails as a matter of law because it is based on allegations

against Defendants as a group. Jones responds by requesting the right to amend his complaint to

add specificity.

Defendants claim that Jones acted in bad faith by failing to specify the individual actions

of each defendant, despite awareness of these actions gained through testimony at Jones' criminal

trial. Defendants also claim that Jones failed to act with due diligence, filing his request at the

"last date possible…[for] filing his response." As a result, Defendants claim that they will need to

depose Jones and all witnesses regarding the new allegations. Finally, Defendants claim

that Jones violated Local Rule 15.1, which requires that a party who moves to amend must attach

the proposed amended pleading to the motion.

Fed. R. Civ. P. 15(a) requires leave to be granted "when justice so requires." Absent

consent of a party, plaintiff may amend its pleading only by leave of the court. Such leave is

generally given liberally. See e.g., *Adkins v. International Union of Electrical, Radio & Machine

Workers,* 769 F.2d 330 (6th Cir. 1985). As the Supreme Court stated:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or
>
> dilatory motive on the part of the movant, repeated failure to cure deficiencies by
>
> amendments previously allowed, undue prejudice to the opposing party by virtue of
>
> allowance of the amendment, futility of amendment, etc.-the leave sought should, as the
>
> rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

It is appropriate to grant Jones' request to amend his complaint so that he can add

specificity to his §1983 claims. Despite Defendants' arguments, the amendment will not prejudice

them. The issues involved in the amended complaint arise from facts gained through discovery. As

Jones emphasizes, the amendment will not require significant new discovery. Nor did Jones

unduly delay. Jones filed his request to amend with his response to Defendant's motion for

summary judgment less than two months after the Defendants filed their motion.

Finally, while Jones failed to comply with Local Rule 15.1, that rule states "failure to

comply with this Rule is not grounds for denial of the motion." "If the underlying facts or

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Dismissing Jones' complaint for insufficient specificity would deprive Jones of an opportunity to test his claims on the merits.

The Motion for Judgment on the Pleadings is **DENIED**. Jones may amend his complaint in conformity with this opinion and order which is allowing only Jones' excessive force, unlawful arrest, and malicious prosecution claims to proceed to trial.

**IT IS ORDERED**.


S/Victoria A. Roberts
United States District Judge

Dated:  7/30/2015